UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| MARK ANTHONY HENDERSON,<br>    Plaintiff, | : | |
| | : | |
| v. | : | Case No. 3:20-cv-1628 (SRU) |
| | : | |
| WARDEN AMONDA HANNAH,<br>    Defendant. | : | |

### INITIAL REVIEW ORDER

On October 28, 2020, Mark Anthony Henderson, a sentenced state prisoner currently confined at Corrigan-Radgowski Correctional Center,[1] brought this *pro se* action pursuant to 42 U.S.C. § 1983.  *See* Compl., Doc. No. 1.  Henderson alleges that the warden of Garner Correctional Institution ("Garner")—Amonda Hannah—violated his Eighth Amendment right to be free from cruel and unusual punishments.  More specifically, Henderson claims that Warden Hannah displayed deliberate indifference to (1) Henderson's need for warm clothing during outdoor recreation and (2) Henderson's ability to access outdoor recreation.  As a remedy for that deliberate indifference, Henderson requests monetary damages and injunctive relief.  Upon initial review, I conclude that Henderson's complaint fails to state a claim upon which relief may be granted and so must be dismissed without prejudice.

**I.    Standard of Review**

Pursuant to 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any

---

[1] Pursuant to Fed. R. Evid. 201(b), I take judicial notice of the fact that Henderson is a sentenced state inmate.  *See* Fed. R. Evid. 201(b)(2) (explaining that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Inmate Information*, CONN. ST. DEP'T OF CORR., http://www.ctinmateinfo.state.ct.us/ (enter Henderson's name or inmate number 382714) (last visited Jan. 26, 2021).

1

portion of those complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[p]ro se complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Factual Background

In October 2019, Henderson was transferred to Garner to complete phases two and three of the Connecticut Department of Correction's (the "DOC") Administrative Segregation Program (the "AS Program").  Compl., Doc. No. 1, at ¶ 1.  At Garner, Henderson was housed in the restrictive housing unit (the "RHU").  *See id.*  As an inmate in the RHU, Henderson was permitted one hour per day of outdoor exercise on five days each week.  *Id.* at ¶¶ 1–2.

Henderson alleges that, beginning on November 12, 2019, there were "continual unseasonably subfreezing windy snowy weather conditions."  *Id.* at ¶ 2.  Henderson, who is bald, requested a hat, gloves and a coat to use during his hour of outdoor recreation.  *Id.* at ¶ 3.[2]

---

[2] Henderson also mentions that he suffers from osteoarthritis in his left shoulder and a completely torn right shoulder rotator cuff.  *See* Compl., Doc. No. 1, at ¶ 2; Medical Records, Doc. No. 1-1*,* at 2–6

2

However, Henderson was provided only "a thin wet coat" that was "missing its plastic zipper" and so could not be fastened. *Id.* at ¶ 4. DOC staff informed Henderson that all coats were in the same condition and were shared among inmates in the RHU for outdoor exercise. *Id.* at ¶¶ 4–5. Henderson claims that on the single occasion in November when he went to outside recreation, the winter conditions caused "severe pain" in his shoulders and "extreme[] cold" on his "face head ears hands and body area." *Id.* at ¶¶ 5–6. Thus, after five minutes outside, Henderson "immediately requested to go back inside." *Id.* at ¶ 6. Henderson concedes that, after that single attempt, he stopped attending outside recreation and, rather, stayed inside. *See id.* at ¶ 8 ("I was not able to use the outside secured recreation yard."); ¶ 9 (noting that Henderson was "not able to go outside"); ¶ 13 ("[P]laintiff was unable to use the outdoor secured recreation yard."); ¶ 16 (explaining that Henderson was "denied access to outdoor exercise recreation for 107+ days").

On November 15, 2019, Henderson wrote to the unit manager to request a "winter hat, gloves and a coat that has a working zipper." *Id.* at ¶ 7; Inmate Request Form, Doc. No. 1-1, at 7. Henderson explained that he was not able to use the outdoor recreation yard without those items. Inmate Request Form, Doc. No. 1-1, at 7. The same day, a DOC staff member responded to Henderson and explained that DOC "provide[s] coats but not hat[s] and gloves during outside recreation." *Id.*

Henderson was dissatisfied with the response to his inmate request. *See* Compl., Doc. No. 1, at ¶ 9. Thus, on November 18, 2019, Henderson filed a Level One grievance regarding the issue. *Id.*; Level One Grievance, Doc. No. 1-1, at 8–9 (requesting "a winter hat, gloves & coat with working plastic zipper, while on A/S status"). On December 2, 2019, Henderson's grievance was denied by Warden Hannah, who explained that "[t]his facility does not provide

3

inmates with hats and gloves for outside recreation." Compl., Doc. No. 1, at ¶ 10; Level One Grievance, Doc. No. 1-1, at 9.  Warden Hannah did not address Henderson's request for a coat with a zipper. *Id.*

Henderson was again dissatisfied with the response to his Level One grievance, and so, on December 5, 2019, Henderson filed a Level Two appeal of Warden Hannah's denial. *See* Compl., Doc. No. 1, at ¶ 11; Level Two Appeal, Doc. No. 1-1, at 10.  Henderson again requested a winter coat with a working zipper, gloves, and a hat while on administrative segregation status. *Id.*  On December 27, 2019, a DOC official denied Henderson's Level Two appeal. *See* Level Two Appeal, Doc. No. 1-1, at 10.  The DOC official explained that Warden Hannah's response was "appropriate." *Id.*  The DOC official also wrote:  "While you[] informed staff that some jackets had malfunctioning zippers and would be replaced, the facility does not provide hats and gloves for outside recreation." *Id.*[3]

Henderson claims that Warden Hannah's failure to "make available dry coats with working plastic zippers hats and gloves" resulted in Henderson's "being denied access to outdoor exercise recreation for 107+ days."  Compl., Doc. No. 1, at ¶ 16.

### III. Discussion

Henderson alleges that Warden Hannah violated the Eighth Amendment by subjecting him to unconstitutional conditions of confinement.  More specifically, Henderson alleges that Warden Hannah violated the Eighth Amendment by denying Henderson appropriate winter

---

[3] Henderson alleges that he "never informed staff that some jackets had malfunctioning zippers" and that, instead, "staff were already aware that all the jackets within the housing unit were missing plastic zippers." Compl., Doc. No. 1, at ¶ 13.

4

exercise clothing with the result that Henderson (1) was exposed to cold weather without adequate clothing and (2) suffered a lack of access to outdoor exercise.

The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *See Wilson v. Seiter*, 501 U.S. 294, 296–97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and that prison officials "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up).  To state a claim for deliberate indifference under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessit[y]" or a "substantial risk of serious harm."  *Id.* at 834 (cleaned up).  To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent; that is, the officials must have known that the plaintiff faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *See id.* at 834, 837.  Thus, an allegation of "mere negligence" is insufficient.  *Id.* at 835.  Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

    A.    <u>Exposure to Cold</u>

5

An inmate's forced, prolonged exposure to cold temperatures can amount to a constitutional violation. *See McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020); *Gaston v. Coughlin*, 249 F.3d 156, 164–65 (2d Cir. 2001). There is "no bright-line durational or severity threshold that a deprivation must meet" to amount to a constitutional violation. *Ford v. Aramark,* 2020 WL 377882, at *7 (S.D.N.Y. Jan. 23, 2020) (quoting *Collins v. Fischer*, 2018 WL 1626528, at *7 (S.D.N.Y. Mar. 30, 2018)) (cleaned up). However, courts have remarked that plaintiffs have succeeded on Eighth Amendment claims based on exposure to cold temperatures only in cases involving "exposure to freezing or near-freezing temperatures for a more prolonged period of time than eleven hours." *Id.* (quoting *Brims v. Ramapo Police Dep't*, 2011 WL 7101233, at *5 (S.D.N.Y. Dec. 23, 2011)) (cleaned up). Indeed, several courts in this Circuit have held that exposures substantially longer than that do not amount to constitutional violations. *See, e.g., Miller v. Netto*, 2019 WL 4646973, at *9 (D. Conn. Sept. 24, 2019) (no constitutional violation based on pre-trial detainee's "expos[ure] to cold temperatures for at most, nineteen hours"); *Stevens v. City of New York*, 2011 WL 3251501, at *4 & n.2 (S.D.N.Y. July 22, 2011) (no constitutional violation when plaintiff alleged that he "was housed in a cell with a broken window—which was 'somewhat' covered by a garbage bag" for up to four days in mid-May); *Borges v. McGinnis*, 2007 WL 1232227, at *6 (W.D.N.Y. Apr. 26, 2007) (no Eighth Amendment violation when plaintiff had been in a 50-degree cell for three days with only a paper gown, paper slippers, and a thin mattress); *Grant v. Riley*, 1993 WL 485600, at *4 (S.D.N.Y. Nov. 24, 1993) (no Eighth Amendment violation when plaintiff "had no coat, bedding or blankets for over nine hours, and that cold wind blew through the broken windows, which were incompletely covered with loose plastic" for three days in December). Put simply, an

6

inmate's exposure to extreme temperatures for a relatively short period of time is generally insufficient to state an Eighth Amendment claim.

Henderson has not plausibly alleged that he was exposed to extreme temperatures for long enough—or severely enough—to amount to an Eighth Amendment violation. First, Henderson concedes that he was not exposed to frigid temperatures for more than five minutes: He went to outside recreation once for five minutes and then elected to stay inside for the remainder of the winter rather than go outside in the clothes provided to him. *See* Compl, Doc. No. 1, at ¶¶ 6, 8–9, 13, 16. Second, even if Henderson had attended outside recreation, he would have been exposed to those temperatures for—at most—five hours per week. As described above, I am aware of no court that has allowed a plaintiff's Eighth Amendment cold-temperature claim to proceed when that plaintiff's exposure was so limited. Third, Henderson does not allege that he was forced to endure cold temperatures in his cell or cell block. Cases in which plaintiffs have alleged plausible Eighth Amendment claims based on exposure to cold temperatures seem to all involve exposure to cold temperatures inside an inmate's cell or cell block. *See, e.g.*, *Gaston*, 249 F.3d at 164–65; *Corselli v. Coughlin*, 842 F.2d 23, 27 (2d Cir. 1988); *Wright v. McMann*, 387 F.2d 519, 526 (2d Cir. 1967). Here, Henderson claims not that he was forced to reside in a freezing cold cell; rather, Henderson claims that, had he wanted to exercise during outside recreation, he would have had to do so without a hat and gloves and with a jacket that did not zip up.

Because I hold that Henderson has not satisfied the objective prong of the Eighth Amendment deliberate indifference test, I need not consider whether Henderson has sufficiently alleged facts to satisfy the subjective prong of that test—that is, whether Warden Hannah acted

7

more than negligently.  I also need not consider whether Henderson has alleged facts that plausibly demonstrate Warden Hannah's personal involvement in any constitutional violation.  *See* Compl., Doc. No. 1, at 13 (seeking damages); *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.") (cleaned up); *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020) ("[F]or deliberate-indifference claims under the Eighth Amendment against a prison supervisor, the plaintiff must plead and prove that the supervisor had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it.").

      B.      <u>Outdoor Exercise</u>

Exercise is a basic human need protected by the Eighth Amendment.  *See Seiter*, 501 U.S. at 304–05; *Williams v. Greifinger*, 97 F.3d 699, 704 n.5 (2d Cir. 1996) (recognizing that "the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise").  However, prison officials may limit the right to out-of-cell exercise where there is a valid safety exception or certain unusual circumstances.  *See id.* at 704.

Here, Henderson has not alleged that Warden Hannah deprived him of the opportunity to engage in out-of-cell exercise.  Henderson has merely alleged that Warden Hannah deprived him of access to a hat, gloves, and a jacket with a working zipper.  Nor has Henderson alleged that he was unable to exercise inside of his cell during the times when he elected not to exercise out of his cell.  *See Shakur v. Sieminski*, 2009 WL 2151174, at *4 (D. Conn. July 15, 2009) (observing that, if an incarcerated person has the opportunity to exercise either inside or outside his cell, prison officials have not violated the inmate's Eighth Amendment rights).  Thus, Henderson has

not sufficiently alleged facts that could plausibly satisfy the objective prong of the Eighth Amendment standard.  *See Conley v. Aldi*, 2020 WL 1333501, at *6 (D. Conn. Mar. 23, 2020) (dismissing plaintiff's Eighth Amendment claim based on alleged inability to recreate outside because it failed to satisfy objective prong of Eighth Amendment test).  Accordingly, I dismiss Henderson's Eighth Amendment claim based on a lack of opportunity to exercise outside because it is not plausible.

## ORDERS

For the foregoing reasons, Henderson's complaint is DISMISSED without prejudice.  I will afford Henderson one opportunity to file an amended complaint, within thirty (30) days from the date of this Order, that corrects the deficiencies identified in this initial review order.  Failure to file an amended complaint within thirty (30) days from the date of this Order will result in a dismissal of the complaint with prejudice.

Dated at Bridgeport, Connecticut this 26th day of January 2021.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge