UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

MARK ANTHONY HENDERSON,      :
     Plaintiff,                 :
                              :
     v.                      :       Case No. 3:20-cv-1628 (SRU)
                              :
WARDEN AMONDA HANNAH,     :
     Defendant.             :

## <u>INITIAL REVIEW ORDER RE: AMENDED COMPLAINT</u>

On October 28, 2020, Mark Anthony Henderson, a sentenced state prisoner currently confined at Corrigan-Radgowski Correctional Center,[1] filed this *pro se* action pursuant to 42 U.S.C. § 1983.  *See* Compl., Doc. No. 1.  In his initial complaint, Henderson alleged that the warden of Garner Correctional Institution ("Garner")—Amonda Hannah—violated his Eighth Amendment right to be free from cruel and unusual punishments.  More specifically, Henderson claimed that Warden Hannah displayed deliberate indifference to Henderson's (1) exposure to cold temperatures during outdoor recreation and (2) ability to access outdoor recreation.  As a remedy for that deliberate indifference, Henderson requested monetary damages and injunctive relief.

On initial review, I dismissed without prejudice Henderson's complaint because it failed to state any plausible claims upon which relief might have been granted.  *See* IRO, Doc. No. 9.  I afforded Henderson an opportunity to file an amended complaint to correct the deficiencies that I identified.  *See id.* at 9.  On February 19, 2021, Henderson filed that amended complaint.  *See*

---

[1]     Pursuant to Fed. R. Evid. 201(b), I take judicial notice of the fact that Henderson is a sentenced state inmate.  *See* Fed. R. Evid. 201(b)(2) (explaining that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012); *Inmate Information*, CONN. ST. DEP'T OF CORR., http://www.ctinmateinfo.state.ct.us/ (enter Henderson's name or inmate number 382714) (last visited Apr. 21, 2021).

Am. Compl., Doc. No. 10.  Henderson's amended complaint cures some, but not all, of the deficiencies that I identified.  More specifically, Henderson still has not stated a plausible Eighth Amendment claim regarding his exposure to cold.  However, now Henderson has stated a plausible Eighth Amendment claim regarding a deprivation of his right to engage in meaningful out-of-cell exercise.

## I.      Standard of Review

Pursuant to 28 U.S.C. § 1915A, I must review prisoner civil complaints and dismiss any portion of those complaints that is frivolous or malicious, that fails to state a claim upon which relief may be granted, or that seeks monetary relief from a defendant who is immune from such relief.  Although detailed allegations are not required, the complaint must include sufficient facts to afford the defendants fair notice of the claims and the grounds upon which they are based and to demonstrate a plausible right to relief.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).  Conclusory allegations are not sufficient.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  Nevertheless, it is well-established that "[*p*]*ro se* complaints 'must be construed liberally and interpreted to raise the strongest arguments that they suggest.'" *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006)); *see also Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010) (discussing special rules of solicitude for *pro se* litigants).

## II.     Factual Background

On October 1, 2019, Henderson was transferred to Garner to commence phase two of the Department of Correction's (the "DOC") Administrative Segregation Program (the "AS

Program"). Am. Compl., Doc. No. 10, at ¶ 1. At Garner, Henderson was housed in the restrictive housing unit (the "RHU"). *See id.* As an inmate in the RHU who was also in phase two of the AS Program, Henderson was permitted one hour per day of outdoor exercise on five days each week. *Id.* at ¶¶ 1–2. That "daily hour of out-of-cell exercise was highly necessary" for Henderson because of his medical conditions—spinal osteoarthritis, osteoarthritis in his left shoulder, and a completely torn right shoulder rotator cuff. *Id.* at ¶ 2; Medical Records, Doc. No. 10, at 13–16. Those five hours per week of outdoor exercise were especially important for Henderson because Henderson was unable to exercise inside his cell. *See* Am. Compl., Doc. No. 10, at ¶ 3 ("I was unable to exercise within my Cell."); ¶ 7 (explaining that he was unable to "exercise in my Cell due to the Administrative Segregation unit Shower Schedule and Size of the Cell").

Henderson alleges that, beginning on November 12, 2019, there were "subfreezing windy snowy weather conditions." *Id.* at ¶ 3. Henderson requested adequate outerwear to use during outdoor recreation. *Id.* However, Henderson was provided only a "thin unsanitary damp Coat" that was "missing its plastic zipper" and so could not be fastened. *Id.* at ¶ 4. Henderson also received "no gloves or hat." *Id.* Henderson claims that on the single occasion in November when he went to outdoor recreation, the winter conditions caused "severe pain" in his shoulders and "extreme[] cold" on his "hands, face, neck, ears, head and upper body." *Id.* at ¶ 5. Thus, Henderson had to leave the yard and return to his cell. *Id.*

On November 15, 2019, Henderson wrote to the unit manager to request a "winter hat, gloves and a coat that has a working zipper" because, without those items, Henderson could not "use the outside recreation cage, due to unseasonably subfreezing weather conditions." *Id.* at ¶

3

6; Inmate Request Form, Doc. No. 10, at 17.  The same day, a DOC staff member responded to Henderson and explained that DOC "provide[s] coats but not hat[s] and gloves during outside recreation."  *Id.*

Henderson was dissatisfied with the response to his inmate request.  *See* Am. Compl., Doc. No. 10, at ¶ 7.  Thus, on November 18, 2019, Henderson filed a Level One grievance regarding the issue.  *Id.* at ¶ 8; Level One Grievance, Doc. No. 10, at 18–19 (explaining that he "was not able to use the outside recreation area because I don't have access to a hat, gloves or Coat with a working plastic zipper").  On December 2, 2019, Warden Hannah denied Henderson's grievance and explained that "[t]his facility does not provide inmates with hats and gloves for outside recreation."  Am. Compl., Doc. No. 10, at ¶ 9; Level One Grievance, Doc. No. 10, at 19.

Henderson was again dissatisfied with the response to his Level One grievance, and so, on December 5, 2019, Henderson filed a Level Two appeal of Warden Hannah's denial.  *See* Am. Compl., Doc. No. 10, at ¶ 9; Level Two Appeal, Doc. No. 10, at 20.  Henderson again requested a winter coat with a working zipper, gloves, and a hat while on administrative segregation status.  Level Two Appeal, Doc. No. 10, at 20.  On December 27, 2019, a DOC official denied Henderson's Level Two appeal.  *Id.*  The DOC official explained that Warden Hannah's response was "appropriate."  *Id.*  The DOC official also wrote:  "[T]he facility does not provide hats and gloves for outside recreation."  *Id.*

Henderson claims that Warden Hannah's failure to act resulted in Henderson's being "denied the opportunity to engage in out of cell exercise for 107 days."  Am. Compl., Doc. No.

10, at ¶ 11.  As relief, Henderson seeks compensatory damages of $30,000 and punitive damages of $10,000.  *See id.* at 12 (paragraphs (A) and (B) under Request for Relief).

### III.    Discussion

In his amended complaint, Henderson alleges that Warden Hannah violated the Eighth Amendment by subjecting him to unconstitutional conditions of confinement.  More specifically, Henderson alleges that Warden Hannah violated the Eighth Amendment by denying him appropriate winter exercise clothing with the result that Henderson (1) was exposed to cold weather without adequate clothing and (2) suffered a lack of access to outdoor exercise.   The Eighth Amendment protects prisoners from "cruel and unusual punishment" at the hands of prison officials.  *See Wilson v. Seiter*, 501 U.S. 294, 296-97 (1991); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Although the Constitution does not require "comfortable" prison conditions, the Eighth Amendment imposes certain duties on prison officials to "ensure that inmates receive adequate food, clothing, shelter, and medical care" and that prison officials "take reasonable measures to guarantee the safety of the inmates."  *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (cleaned up).  To state a claim for deliberate indifference under the Eighth Amendment, an inmate must demonstrate both an objective and a subjective element.

To meet the objective element, an inmate must allege that he was incarcerated under conditions that resulted in a "sufficiently serious" deprivation, such as the denial of a "life[] necessit[y]" or a "substantial risk of serious harm."  *Id.* at 834 (cleaned up).  To meet the subjective element, an inmate must allege that the defendant prison officials possessed culpable intent; that is, the officials must have known that the plaintiff faced a substantial risk to his health or safety and disregarded that risk by failing to take corrective action.  *See id.* at 834, 837.  Thus,

an allegation of "mere negligence" is insufficient.  *Id.* at 835.  Rather, the subjective element requires that a plaintiff allege that prison officials acted with "a mental state equivalent to subjective recklessness, as the term is used in criminal law."  *Salahuddin v. Goord,* 467 F.3d 263, 280 (2d Cir. 2006).

    A.    <u>Exposure to Cold</u>

To the extent that Henderson's amended complaint re-asserts an Eighth Amendment claim based on his exposure to cold temperatures, I dismiss it for the same reasons that I already articulated in my initial review order.  An inmate's forced, prolonged exposure to cold temperatures can amount to a constitutional violation.  *See McFadden v. Noeth*, 827 F. App'x 20, 29 (2d Cir. 2020); *Gaston v. Coughlin*, 249 F.3d 156, 165 (2d Cir. 2001).  There is "no bright-line durational or severity threshold that a deprivation must meet" to amount to a constitutional violation.  *Ford v. Aramark,* 2020 WL 377882, at *7 (S.D.N.Y. Jan. 23, 2020) (quoting *Collins v. Fischer*, 2018 WL 1626528, at *7 (S.D.N.Y. Mar. 30, 2018)) (cleaned up).  However, courts have remarked that plaintiffs have succeeded on Eighth Amendment claims based on exposure to cold temperatures only in cases involving "exposure to freezing or near-freezing temperatures for a more prolonged period of time than eleven hours."  *Id.* (quoting *Brims v. Ramapo Police Dep't*, 2011 WL 7101233, at *5 (S.D.N.Y. Dec. 23, 2011)) (cleaned up); *see also Henry v. Doe*, 2020 WL 209091, at *6 (S.D.N.Y. Jan. 10, 2020) ("If the cold is mild, or the exposure is short-term, Courts generally do not find a constitutional violation.").  Indeed, several courts in this Circuit have held that exposures even substantially longer than that do not amount to constitutional violations.  *See, e.g., Miller v. Netto*, 2019 WL 4646973, at *9 (D. Conn. Sept. 24, 2019) (no constitutional violation based on pre-trial detainee's "expos[ure] to cold temperatures for at

most, nineteen hours"); *Stevens v. City of New York*, 2011 WL 3251501, at \*4 & n.2 (S.D.N.Y. July 22, 2011) (no constitutional violation when plaintiff alleged that he "was housed in a cell with a broken window—which was 'somewhat' covered by a garbage bag" for up to four days in mid-May); *Borges v. McGinnis*, 2007 WL 1232227, at \*6 (W.D.N.Y. Apr. 26, 2007) (no Eighth Amendment violation when plaintiff had been in a 50-degree cell for three days with only a paper gown, paper slippers, and a thin mattress); *Grant v. Riley*, 1993 WL 485600, at \*4 (S.D.N.Y. Nov. 24, 1993) (no Eighth Amendment violation when plaintiff "had no coat, bedding or blankets for over nine hours, and [] cold wind blew through the broken windows, which were incompletely covered with loose plastic" for three days in December).

As I explained on initial review, an inmate's exposure to extreme temperatures for a relatively short period of time is generally insufficient to state an Eighth Amendment claim. IRO, Doc. No. 9 at 6–7.  And in his initial complaint, Henderson had "not plausibly alleged that he was exposed to extreme temperature for long enough—or severely enough—to amount to an Eighth Amendment violation."  *Id.* at 7.  In fact, Henderson "was not exposed to frigid temperatures for more than five minutes" because, in November 2019, he went to outside recreation "once for five minutes[2] and then elected to stay inside for the remainder of the winter rather than go outside in the clothes provided to him."  *Id.*  In addition, I explained that, "even if Henderson had attended outside recreation, he would have been exposed to those temperatures for—at most—five hours per week," and I was "aware of no court that has allowed a plaintiff's Eighth Amendment cold-temperature claim to proceed when that plaintiff's exposure was so

---

[2]      In his amended complaint, Henderson does not include the fact that he was outside for only five minutes. But the substance of Henderson's allegations is the same:  Henderson again alleges that he was outside only briefly on one day in November 2019.  *See* Am. Compl., Doc. No. 10, at ¶¶ 5, 11.  Indeed, Henderson could not have been outside for more than one hour because he was allowed just one hour of outdoor exercise per day.

limited." *Id.*  Finally, I wrote that Henderson's cold-temperature claim was markedly different from successful cold-temperature claims because Henderson did "not allege that he was forced to endure cold temperatures in his cell or cell block." *Id.*  No allegations in Henderson's amended complaint regarding his exposure to the cold correct the deficiencies that I identified in my initial review order.  Thus, I dismiss Henderson's Eighth Amendment claim based on exposure to cold temperatures because, taking his allegations as true, Henderson has not satisfied the objective prong of the Eighth Amendment deliberate indifference test.

  B. <u>Outdoor Exercise</u>

  In my initial review order, I held that Henderson had "not sufficiently alleged facts that could plausibly satisfy the objective prong of the Eighth Amendment standard" with respect to his outdoor exercise claim.  *Id.* at 9.  Now, though, Henderson has corrected that deficiency. Exercise is a basic human need protected by the Eighth Amendment.  *See Seiter*, 501 U.S. at 304–05; *Williams v. Greifinger,* 97 F.3d 699, 704 n.5 (2d Cir. 1996) (recognizing that "the Eighth Amendment requires that prison inmates be allowed some out-of-cell exercise").

  To be sure, under certain circumstances—a valid safety reason or certain unusual conditions—prison officials may limit a prisoner's right to out-of-cell exercise.  *See Williams,* 97 F.3d at 704–05.  But "[t]he availability of in-cell exercise does not establish as a matter of law that a prisoner had a meaningful opportunity to exercise."  *Edwards v. Quiros*, 986 F.3d 187, 194 (2d Cir. 2021).  Indeed, the Second Circuit has "permitted Eighth Amendment opportunity-to-exercise claims to proceed where those claims exclusively concerned impediments to out-of-cell exercise," including impediments that lasted for less than four months.  *Id.* at 194 & n.22 (citing cases).  For instance, in a recent case, the Second Circuit held that a prisoner stated a valid

Eighth Amendment right-to-exercise claim when he alleged that prison officials failed to clear snow and ice from large portions of outdoor recreation yards during the winter months. *See McCray v. Lee*, 963 F.3d 110, 114–18 (2d Cir. 2020). The prison officials' conduct in *McCray* left more than 75 percent of the outdoor recreation space unusable because there was "snow and ice at waist height," and the overcrowding in the remaining areas left the plaintiff with no room to exercise outside. *Id.* at 118. In *McCray*, the plaintiff also did not have access to an indoor gym. *See id.* at 114.

Given that standard, Henderson has plausibly alleged that Warden Hannah violated his Eighth Amendment rights by not providing him sufficiently warm clothing so that he could use Garner's outdoor recreation yard. Henderson claims that without warm clothing, he could not exercise outside for 107 days (three and half months). Importantly—and this fact is newly included in Henderson's amended complaint—Henderson alleges that he also could not exercise in his cell during that period "due to the Administrative Segregation unit Shower Schedule and Size of the Cell." Am. Compl., Doc. No. 10, at ¶ 7. Construed most favorably, Henderson's allegations raise an inference that he was deprived of the opportunity for meaningful out-of-cell exercise for more than an "occasional day" of inclement weather during the cold winter months, *see Anderson v. Coughlin*, 757 F.2d 33, 36 (2d Cir. 1985), and that in-cell exercise was not possible. Thus, I conclude that Henderson has satisfied the objective prong of the Eighth Amendment's deliberate indifference test.

Henderson has also satisfied the subjective prong of that test. To do so, Henderson "must plead and prove that [Warden Hannah] had subjective knowledge of a substantial risk of serious harm to an inmate and disregarded it." *Tangreti v. Bachmann*, 983 F.3d 609, 616 (2d Cir. 2020).

9

Construed most liberally, Henderson's complaint does that.  Warden Hannah personally

reviewed Henderson's Level One grievance—and denied it.  *See* Level One Grievance, Doc. No.

10, at 18–19.  In that Level One grievance, Henderson specifically complained that, during the

"unseasonably subfreezing weather" in November 2019, he was "not able to use the Outside

recreation area because I don't have access to a hat, gloves or Coat with a working plastic

zipper."  *Id.*  Warden Hannah's response—that "[t]his facility does not provide inmates with hats

and gloves for outside recreation"—did not address Henderson's concerns regarding his inability

to access outdoor recreation.  Thus, Henderson's amended complaint raises a plausible inference

that Warden Hannah consciously disregarded the deprivation of Henderson's right to meaningful

exercise.  For purposes of initial review, Henderson has plausibly alleged an Eighth Amendment

claim against Warden Hannah.

### ORDERS

(1)     This case will proceed on Henderson's Eighth Amendment claim against Warden

Hannah for deliberate indifference to the deprivation of Henderson's opportunity to engage in

meaningful exercise during the cold winter months.  However, I **dismiss** Henderson's Eighth

Amendment claim based on Warden Hannah's alleged deliberate indifference to exposure to the

cold.  Because I have already afforded Henderson one opportunity to amend his complaint, I will

not permit Henderson to file another amended complaint to correct the deficiencies with that

Eighth Amendment claim.

(2)     Henderson's motions requesting an update on the status of my initial review of his

amended complaint, doc. nos. 11 and 12, are **denied as moot**.

(3)     The clerk shall verify the current work address for Warden Amonda Hannah with

the DOC Office of Legal Affairs, mail Warden Hannah a waiver of service of process request packet containing the amended complaint (doc. no. 10) and this Initial Review Order at her confirmed address within **twenty-one (21) days** of entry of this Order, and report on the status of the waiver request on the **thirty-fifth (35th) day** after mailing.

If Warden Hannah fails to return the waiver request, the clerk shall make arrangements for in-person individual capacity service by the U.S. Marshals Service, and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(4)    The clerk shall send courtesy copies of the amended complaint (doc. no. 10) and this Initial Review Order to the DOC Office of Legal Affairs and the Office of the Attorney General.

(5)    **Defendant Warden Hannah** shall file her response to the amended complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date on which the notice of lawsuit and waiver of service of summons forms are mailed to her.  If **Defendant Warden Hannah** chooses to file an answer, she shall admit or deny the allegations and respond to the cognizable claims recited above.  She may also include any and all additional defenses permitted by the Federal Rules.

(6)    Discovery, according to Federal Rules of Civil Procedure 26–37, shall be completed within **six months (180 days)** from the date of this Initial Review Order.  Discovery requests should not be filed with the Court.

(7)    The parties must comply with the District of Connecticut's "Standing Order Re: Initial Discovery Disclosures," which will be sent to both parties by the Court.  The Order can

also be found at http://ctd.uscourts.gov/administrative-standing-orders.

      (8)    All motions for summary judgment shall be filed within **seven months (210 days)**

from the date of this Order.

      (9)    According to Local Civil Rule 7(a), a nonmoving party must respond to a

dispositive motion within **twenty-one (21) days** of the date the motion was filed.  If no response

is filed, or the response is not timely, the dispositive motion can be granted absent objection.

      (10)    If Henderson changes his address at any time during the litigation of this case,

Local Civil Rule 83.1(c)2 provides that he MUST notify the Court.  Failure to do so can result in

the dismissal of the case.  Henderson must give notice of a new address even if he is

incarcerated.  He should write "PLEASE NOTE MY NEW ADDRESS" on the notice.  It is not

enough to put the new address on a letter without indicating that it is a new address.  If

Henderson has more than one pending case, he should indicate all of the case numbers in the

notification of change of address.  He should also notify the defendant or defense counsel of his

new address.

      (11)    Henderson shall use the Prisoner Efiling Program when filing documents with the

court.  Henderson is advised that the Program may be used only to file documents with the court.

Local court rules provide that discovery requests are not filed with the court.  D. Conn. L. Civ. R.

5(f).  Therefore, discovery requests must be served on defendant's counsel by regular mail.

      It is so ordered.

      Dated at Bridgeport, Connecticut this 21st day of April 2021.

                                  /s/ STEFAN R. UNDERHILL
                                  Stefan R. Underhill
                                  United States District Judge